IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS G. SKLANEY,       )
                         )
                         )
    Plaintiff,           )
                         )   No. 10 CV 5917
    v.                   )   Jeffrey T. Gilbert
                         )   Magistrate Judge
WILBERT FUNERAL SERVICES, INC., )
                         )
    Defendant.           )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wilbert Funeral Services, Inc.'s Motion for Summary Judgment, filed April 15, 2011 [Dkt.#22]. Defendant contends that Plaintiff Thomas G. Sklaney released any claims arising from his employment by Defendant, including the instant age discrimination claim, when he signed a separation agreement and general release, and received a severance payment, as part of a reduction in force implemented by Defendant in 2008. For the reasons set out in this Memorandum Opinion and Order, Defendant's motion for summary judgment is granted.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Thomas G. Sklaney ("Sklaney") filed this action against Defendant Wilbert Funeral Services, Inc. ("Wilbert") on September 17, 2010. (Compl. ¶ 1; Def.'s SOF ¶ 17). He alleges that Wilbert discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2006). (Compl. ¶ 9). Wilbert contends that Sklaney released this claim and all others relating to his employment by Wilbert pursuant to a Separation Agreement and General Release ("Separation Agreement"),

signed on March 28, 2008, and pleads this release as an affirmative defense. (Def.'s Answer and Affirmative Defenses 7). Wilbert argues that it is entitled to summary judgment on the basis of the express and unambiguous terms of the Separation Agreement. (Def.'s Mem. In Supp. of Its Mot. For Summ. J. 1). Sklaney avers that the release in the Separation Agreement is invalid because it was not knowingly and voluntarily executed in that (1) the Agreement itself failed to strictly comply with the minimum requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f) (2006), and (2) Sklaney did not knowingly and voluntarily release his clams under the ADEA as revealed by the totality of the circumstances surrounding the execution of the Separation Agreement. (Pl.'s Mem. Of Law in Opp'n to Def.'s Mot. For Summ. J. 4-5).

Wilbert employed Sklaney in various capacities for approximately thirty-six years. (Compl. ¶ 13). Sklaney started as a sheet metal worker, and continued on to become an Information System Coordinator. (Compl. at ¶ 13). At the time of his termination, Sklaney was working as a Billing Specialist. *Id.* On February 12, 2008, as part of a reduction-in-force, Wilbert terminated Sklaney's employment and presented him with the Separation Agreement. (Def.'s Mem. 2; P's Mem. 1). Under the terms of the Agreement, Sklaney was entitled to receive twenty-six weeks of severance pay in exchange for his release of any and all claims "relating to or arising out of his employment," including those based upon the ADEA. (Def.'s Exh. 4). The February 12, 2008 letter accompanying the Separation Agreement advised Sklaney to consider his options, told him to feel free to consult an attorney about the Agreement, and informed him that he had forty-five days to consider whether he would sign the Agreement and then seven days after signing it to revoke his assent. (Def.'s Exh. 3). Attached to this letter was

a list of all of the employees who were and were not selected for termination, along with their respective job titles and ages. (Def.'s Exh. 4).

On March 28, 2008, Sklaney signed the Separation Agreement, and Wilbert proceeded to make bi-weekly severance payments to him over the next six months. (Def.'s SOF ¶¶ 14, 15; Def.'s Exh. 2). Wilbert paid Sklaney a total of $33,963.54 pursuant to the Separation Agreement. (Def.'s SOF ¶ 15). On November 16, 2008, Sklaney filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s SOF ¶ 16). After the EEOC issued a Notice of Right to Sue, Sklaney filed the present action. (Def.'s SOF ¶ 17).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears an initial burden of demonstrating that there are no genuine issues of material fact by identifying those portions of the record that it believes indicate the absence of such issues. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324. A genuine issue exists where a "reasonable jury could return a verdict for the non-moving party" on the basis of the evidence presented, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and where there is more than a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In considering a motion for summary judgment, the court examines the evidence in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.

3

## II. The Separation Agreement Strictly Complied With The Requirements of the OWBPA

In order to be valid, the release of ADEA claims must be "knowing and voluntary." 29 U.S.C. § 626(f)(1); *see also Pierce v. Atchison T. & S.F. Ry. Co.*, 110 F.3d 431, 433 (7th Cir. 1997) (*Pierce II*). Under the OWBPA, the party seeking to enforce the waiver—here, Wilbert—bears the burden of demonstrating that the waiver was "knowing and voluntary." 29 U.S.C. § 626(f)(3); *see also Pierce II*, 110 F.3d at 438. Pursuant to the OWBPA, a release may not be considered knowing and voluntary unless it meets certain minimum requirements. 29 U.S.C. § 626(f)(1). The OWBPA demands strict compliance with each of these requirements, and a failure to properly comply with any individual requirement will render a release invalid. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). At issue here is the first requirement, which is that the release must be "written in a manner calculated to be understood" by the individual in question or, in the case of an exit incentive program such as a reduction-in-force, by the "average individual eligible to participate" in the program. 29 U.S.C. § 626(f)(1)(A). To satisfy this requirement, a release must use plain language that does not have the effect of "misleading, misinforming, or failing to inform" participants. 29 C.F.R. § 1625.22(b)(3) (2010).

Sklaney contends that the Separation Agreement fails to meet this requirement because it contains two conflicting clauses, one that releases Wilbert from all claims under the ADEA (paragraph 2), and another that, according to Sklaney, is plausibly read as allowing Sklaney to retain "timely" claims under the ADEA (paragraph 9). (Pl.'s Mem. 2). Wilbert argues that there is no contradiction between the clauses: paragraph 2 operates as a general release while paragraph 9 is a tender-back provision that protects Sklaney from having to return the consideration he received for his release in the event he seeks to challenge the enforceability of

4

the release of his ADEA claims. Under federal law, an employer such as Wilbert cannot require an employee to tender-back any consideration received for a release of ADEA claims as a condition of challenging the enforceability of a release of such claims. *See* 29 C.F.R. § 1625.23(b) (2010) (stating that "no ADEA waiver . . . may impose any . . . limitation adversely affecting [an] individual's right to challenge the agreement.") Wilbert says that paragraph 9 effectuates this provision of federal law.

Sklaney relies upon two cases that dealt with a release used by the International Business Machines Corporation ("IBM"). In both of those cases, *Thomforde v. International Business Machines Corp.*, 406 F.3d 500, 504 (8th Cir. 2005) and *Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1074 (9th Cir. 2007), the court held that a release agreement did not satisfy the "manner calculated" requirement where it contained both a general release clause as well as covenant not to sue, and excepted ADEA claims from the purview of the covenant not to sue. The Ninth Circuit based its holding upon the potentially confusing usage of two legal terms—"release" and "covenant not to sue"—that the average employee might be expected to construe as interchangeable: "to a lay reader . . . these provisions seem first to release all ADEA claims an employee might have, and then to preserve a right to sue under the ADEA, implying retention, not release, of ADEA claims." *Syverson*, 472 F.3d at 1083.

The Separation Agreement employed in Sklaney's case, however, does not falter under the same type of confusion. It does not make interchangeable use of the legal terms of art "release" and "covenant not to sue" or anything of the kind. Instead, it contains one clause (paragraph 2) that clearly releases Wilbert from any claims "relating to or arising out of Sklaney's employment with and termination from the Company"—including those based upon the ADEA—and another clause (paragraph 9) that clearly excepts Sklaney from the requirement

5

of returning "all monies . . . receive[d] pursuant to this agreement" if he should decide to challenge the enforceability of the release of his ADEA claims. (Def.'s Exh. 4).

Thus, this case is more analogous to *Parsons v. Pioneer Seed Hi-Bred International Inc.*, 447 F.3d 1102 (8th Cir. 2006), in which the court held that the "manner calculated" requirement was satisfied where a release agreement contained both a general release and a tender-back provision, but excepted a challenge to the release of claims under the ADEA from the purview of the tender-back provision. As the Eighth Circuit reasoned, the terms of the tender-back provision neither "purport[ed] to negate" nor contradicted the general release. *Id.* at 1105. Instead, the provision was drafted so that its own applicability would be circumscribed within the bounds of the federal regulation prohibiting any limitation on an individual's right to challenge the release of ADEA claims.

An examination of the clauses at issue in Sklaney's case reveals that they are similarly drafted. Paragraph 2, the release, reads as follows:

> In consideration of the agreement of the Company to make the payment in Paragraph 1 to Sklaney . . . Sklaney, on behalf of himself, his heirs, executors, assigns, and administrators, does release and forever discharge the Company of and from any and all legal and equitable causes of action, suits, controversies, claims . . . and . . . all matters relating to or arising out of Sklaney's employment with and termination from the Company . . . including . . . any causes of action or claims relating to . . . federal . . . laws . . . including the Age Discrimination in Employment Act . . . . (Def.'s Exh. 4, ¶ 2).

Paragraph 9, the tender-back provision, reads as follows:

> Sklaney further understands that in the event that he or his heirs, executors, or administrators attempts to institute or does institute any claim, suit, or action against the Company (except for a timely claim under the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act ("OWBPA") to challenge the enforceability of the release of age discrimination claims under this Agreement), Sklaney shall be obligated, as an express condition of bringing or instituting such action to return all monies and benefits he receives pursuant to this Agreement. (Def.'s Exh. 4, ¶ 9).

6

Sklaney clearly releases all claims, including any ADEA claims, in paragraph 2. Paragraph 9 provides that he can challenge the enforceability of that release without returning to Wilbert the monies he received under the Separation Agreement, consistent with federal law. *See* 29 C.F.R. § 1925.23(b).

According to Sklaney, "[t]he clause Plaintiff relied on was in Paragraph 9, of the agreement wherein it stated that Plaintiff could challenge the enforceability of the agreement and preserved his right to proceed against Wilbert Funeral Services, Inc., under the Age in Discrimination Act (ADEA) [sic]." (Pl's Mem. at 2).[1] But Sklaney selectively reads paragraph 9 and ignores the import of the operative language in that provision. Paragraph 9 does not preserve an unlimited "right to proceed against Wilbert Funeral Services, Inc., under the ADEA." Rather, paragraph 9 exempts from the tender-back requirement "a timely claim under the ADEA and the OWPA <u>to challenge the enforceability of the release of age discrimination claims under this Agreement</u>." (Def.'s Ex. 4, ¶ 9, emphasis added). It is not a blanket reopener of the ADEA release in paragraph 2 of the Agreement in the event Sklaney chose to challenge the release. Whether Wilbert could have used language that was even more clear is irrelevant. The Separation Agreement, read as a whole, is neither confusing nor ambiguous. It is written in a manner calculated to be understood by Sklaney and by the average employee eligible to participate in Wilbert's reduction-in-force.

### III. The Release Was Knowing and Voluntary Under the Totality of the Circumstances

In addition to the minimum requirements set out by the OWBPA, "other facts and circumstances may bear on the question of whether the waiver is knowing and voluntary." 29 C.F.R. § 1625.22(3) (2010). In the Seventh Circuit, such "other circumstances" include the

---

[1] Plaintiff also argues, "in paragraph 9, they created a subsequent condition by indicating that if Sklaney files and [sic] action for any reason he would forfeit monies received under the agreement except for any actions commenced under the ADEA." (Pl.'s Mem. at 3).

7

presence of mistake, accident, duress, or fraud. *See Seward v. General Motors Corp.*, 805 F. Supp. 623, 628 (N.D. Ill. 1992) (defining a "knowing and voluntary" release as one that is purposefully executed—without mistake, accident, duress, or fraud). These additional considerations are subjected to a "totality of the circumstances" test, in which eight different factors are examined. *See Pierce v. Atchison T. & S.F. Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995) (*Pierce I*). However, this test is not employed in all cases where a release agreement is at issue. *Id.* Rather, the plaintiff, bearing the burden of production, must first "come forward with specific evidence sufficient to raise a question as to the validity of the release under the totality approach." *Pierce II*, 110 F.3d at 438. The evidence is insufficient where the plaintiff cannot produce any "concrete information" that demonstrates the presence or absence of some or all of the totality factors. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011) (declining to perform the analysis where the employee did not present enough evidence to create a question of fact on the issue of knowing and voluntary release). If the court deems the evidence sufficient, it will perform a totality analysis.

Here, Sklaney has done nothing more than (1) state that he did not "knowingly believe" he was surrendering his rights under the ADEA when he signed the Separation Agreement, and (2) allege that he signed because he was in need of income due to his termination. (Sklaney Decl. ¶¶ 7, 5). Sklaney's statements, without more, probably do not satisfy Sklaney's burden of production. The Separation Agreement still would be deemed knowing and voluntary, however, even if a totality analysis had been triggered.

Under a totality analysis, Wilbert, as the party attempting to enforce the Separation Agreement, bears the burden of demonstrating that the eight factors identified in the applicable case law weigh in its favor. *See* 29 U.S.C. § 626(f)(3); *see also Pierce II*, 110 F.3d at 438.

These factors are: (1) the employee's education and business experience, (2) the employee's input in negotiating the terms of the settlement, (3) the clarity of the agreement, (4) the amount of time the employee had for deliberation before signing the release, (5) whether the employee actually read the release and considered its terms before signing it, (6) whether the employee was represented by counsel or consulted with an attorney, (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law, and (8) whether the employee's release was induced by improper conduct on the defendant's part. *Pierce I*, 65 F.3d at 571; *see also Howell*, 633 F.3d at 559.

### A. Education and Business Experience

Though Sklaney does not allege any facts relevant to this consideration, it is undisputed that he was in Wilbert's employ for approximately thirty-six years. (Compl. ¶ 13). Thus, it is certainly the case that he has over thirty years of business experience. He rose through the ranks from sheet metal worker to Information System Coordinator and then was a Billing Specialist. (*Id.*) Additionally, it has been held that if the employee possesses the equivalent of a high school education, that is sufficient to weigh the factor in the employer's favor. *See Kinney v. Hamilton Partners*, No. 03 C 3905, 2004 U.S. Dist LEXIS 5980, at *25 (N.D. Ill. Apr. 7, 2004). Thus, it stands to reason that extended business experience also is sufficient. Indeed, Sklaney does not contend that he lacked the education or business experience to understand the Separation Agreement. With no evidence to the contrary brought forward by Sklaney, this Court finds that the first factor favors Wilbert.

### B. The Employee's Input in Negotiating the Terms of the Settlement

Sklaney had no input in negotiating the terms of the Separation Agreement, a fact which Wilbert concedes. (Def.'s Reply Mem. 11). This alone, however, will not defeat the validity of

the release of ADEA claims in the Separation Agreement. *See Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp.*, 950 F.2d 389, 395 (7th Cir. 1991) (suggesting that though the employee had no input, the weight of this factor was ambiguous where there was no evidence that the employer would have refused to negotiate if asked). Nevertheless, in this case, because Sklaney was presented with the Separation Agreement in a take-it-or-leave-it fashion, this Court concludes that the second factor weighs in favor of Sklaney.

### C. The Clarity of the Agreement

The Separation Agreement consists of four pages, the clear import of which is that Sklaney releases any and all claims he has against Wilbert in exchange for twenty-six weeks of severance pay. Though Sklaney contends that, because of the perceived contradiction between paragraphs 2 and 9, he did not "knowingly believe" he was surrendering his ADEA claims by signing the Separation Agreement, this Court already has rejected his contention that the Separation Agreement was ambiguous or that it expressly and broadly preserved Sklaney's ability to sue Wilbert under the ADEA despite his release of such claims. Thus, because the Separation Agreement was written in a manner calculated to be understood by the average participant and the Agreement was substantially clear on its face, the third factor favors Wilbert.

### D. The Amount of Time the Employee Had for Deliberation Before Signing the Release

By the terms of the Agreement itself, Sklaney was given forty-five days to deliberate. He took advantage of this entire period, ultimately deciding to sign the Agreement on March 28, 2008. (Def.'s SOF ¶ 13; Pl.'s SOF ¶ 3). Because Sklaney had ample time for consideration, the fourth factor favors Wilbert.

### E. Whether the Employee Actually Read the Release and Considered its Terms

10

The evidence suggests that Sklaney actually read the Agreement, as he avers that he relied upon a perceived ambiguity in paragraph 9 for his belief that he retained his ADEA claim despite his release of that claim in paragraph 2. (Sklaney Decl. ¶ 6). Regardless of the fact that Sklaney may have misinterpreted the provisions of the Agreement, he clearly read it. Moreover, as he eventually signed the Agreement—after taking the full forty-five day period to deliberate—it is reasonable to conclude that he considered the Agreement's terms. The fifth factor favors Wilbert.

### F. Whether the Employee Was Represented By Counsel or Consulted With an Attorney

Where an employee executes or negotiates a release agreement while represented by independent counsel, the court presumes that the release was knowing and voluntary. *See Pierce II*, 110 F.3d at 438. In this case, there is no evidence that Sklaney was represented by or consulted with counsel, and thus there is no presumption in favor of Wilbert. However, both the February 12, 2008 letter accompanying the Separation Agreement and the Agreement itself informed Sklaney that he had the right to consult an attorney and should take advantage of that right. (Def.'s Exhs. 3, 4.) Though it is clear that Sklaney was advised to contact an attorney, there are no facts in the record suggesting that he did, in fact, do so. On the other hand, Sklaney submitted a sworn declaration in opposition to Wilbert's motion for summary judgment and he does not say in that declaration that he did not consult with counsel before he signed the Agreement. Given Wilbert's burden of proof on the issue of knowing and voluntary waiver, and the absence of any evidence in the record as to whether Sklaney actually followed Wilbert's suggestion that he consult an attorney, this sixth factor weighs in favor of Sklaney, but only slightly under these circumstances.

11

### G. Whether the Consideration Given in Exchange for the Waiver Exceeded the Benefits to Which Plaintiff Was Already Entitled By Contract or Law

Sklaney was provided with twenty-six weeks of severance pay, grossing $33,963.54, in return for his release. (Def.'s SOF ¶ 15). There is no evidence suggesting that Sklaney was already owed this money, and the Separation Agreement explicitly states that the severance pay functioned as compensation for the release. (Def.'s Exh. 4). Thus, the seventh factor weighs in favor of Wilbert.

### H. Whether the Employee's Release Was Induced By Improper Conduct on the Defendant's Part

Sklaney asserts that he signed the Separation Agreement because of the need for income in light of his termination. (Sklaney Decl. ¶ 5). This is essentially a contention that he signed the Agreement under duress.

In order to establish the existence of duress as a consideration under this factor, Sklaney must show that Wilbert performed some wrongful act which rendered him "bereft of the quality of mind essential to the making of a contract." *Seward*, 805 F. Supp. at 628 (quoting *Kaplan v. Kaplan*, 182 N.E.2d. 706, (Ill. 1962)). In other words, Sklaney must have been subjected to circumstances, created by Wilbert's wrongful conduct, which deprived him of his free will. Such circumstances, however, must have risen above the level of "mere annoyance, vexation, [or] personal embarrassment" to create "imposition, oppression, undue influence, or the taking of undue advantage of . . . the . . . extreme necessities or weaknesses of another." *Pierce I*, 65 F.3d at 569. Moreover, the actions that created such circumstances must have been wrongful in a criminal, tortious, or moral sense. *See Seward*, 805 F. Supp. at 628.

Though the court recognizes that Sklaney may have acted under financial strain, the circumstances surrounding his assent to the Separation Agreement do not rise to the level of

deprivation of free will. This is evidenced by the fact that he took forty-five uninterrupted days in which to deliberate over the Agreement. Additionally, though Wilbert's actions may have placed Sklaney in this position of financial strain, they are not therefore wrongful: Wilbert was within its rights to reduce the size of its workforce, and did nothing criminal, tortious, or immoral in offering Sklaney severance pay in return for his release. Thus, the eighth and final factor favors Wilbert. *Compare Holler v. Holler*, 612 S.E.2d 469, 476 (S.C. Ct. App. 2005) (duress found to invalidate prenuptial agreement where woman was pregnant, unsupported, three days away from deportation, and could not understand the document because English was not her first language), and *Arians v. Larkin Bank*, 625 N.E.2d 1101, 1104 (Ill. App. Ct. 1993) (duress found to invalidate bank notes where husband and wife were coerced into signing by threats that their son would be sent to jail if they did not), with *Thiessen v. General Elec. Capital Corp.*, 232 F. Supp. 2d 1230, 1243 (D. Kan. 2002) (finding no duress where individuals' financial situations were such that they might have lost their insurance benefits or the ability to pay their bills if they did not sign).

An examination of the totality of the circumstances demonstrates that Sklaney knowingly and voluntarily released any and all claims, including ADEA claims, against Wilbert when he signed the Separation Agreement and accepted six-months of compensation as part of Wilbert's reduction-in-force. All but two of the eight factors clearly favor Wilbert. And one of the two factors that do not clearly favor Wilbert—consultation with an attorney—only slightly favors Sklaney. He was encouraged by Wilbert to consult an attorney before signing the Separation Agreement and Sklaney, with every opportunity to say so in his sworn declaration, does not say he did not follow Wilbert's advice.

Based upon the undisputed facts and viewing the record in the light most favorable to Sklaney, this Court concludes that the Separation Agreement does not fail the "manner calculated" requirement of the OWBPA, and thus, the Agreement strictly complies with the minimum prerequisites necessary to render a release knowing and voluntary. Because the Separation Agreement satisfies the minimum requirements of the OWBPA and the totality of the circumstances show that the release was knowing and voluntary, this Court finds that the Separation Agreement is valid as a matter of law, and thus, that Sklaney's claims against Wilbert, including his ADEA claim, have been released. There are no disputed issues of material fact that prevent us from reaching this conclusion.

## CONCLUSION

For all of the reasons stated in the Court's Memorandum Opinion and Order, Defendant Wilbert Funeral Services, Inc.'s motion for summary judgment [Dkt.#22] is granted. This is a final and appealable order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 17, 2011